GARRISON, Judge.
This is an appeal from a judgment of the district court granting to plaintiff damages in the amount of $85,867.85 plus interest, costs and expert fees for alleged mental injuries and physical abuse sustained by him on May 11,1973, when he was detained at a Schwegmann’s Supermarket for several hours and allegedly was roughly interrogated by the security guards. From that judgment, which we affirm, defendant appeals.
The trial judge provided 14 pages of reasons for judgment, excerpts of which are quoted below:
* * * * * *
“The facts of the instant case show that on May 11, 1973 at or about 1:30 P. M., *343 the plaintiff Landry was shopping at the Schwegmann’s Brothers Giant Food Store located on Gentilly Highway. That is uncontroverted. The facts show that he was stopped, seized and detained by a security officer in the employment of Schwegmann Brothers Giant Supermarket in the instance store. That is uncon-troverted. He was stopped, seized and detained because the security officer had come to the conclusion that Landry had stolen an object from the Schwegmann’s Brothers Supermarket and that he had put an object in his pocket for which he did not pay. That is uncontroverted. “After Landry was brought to the security office in the store he was questioned. That is uncontroverted. And unfortunately for Schwegmann’s, and fortunately for Landry, it was concluded that the officer had made a grave, grave mistake because lo and behold Landry did not in fact steal anything, hide anything, attempt to get away with anything without paying. The bag of items brought were opened and each item accounted for on the receipt ticket. That is uncontrovert-ed.
“So up to this stage we have uncontro-verted testimony that Landry was illegally and unlawfully detained and seized by a security officer of Schwegmann’s Brothers who was completely in error, who was guilty of gross negligence. Worse than running into someone in the rear of a car loaded. Gross negligence. To detain a person and accuse him of pilferage and stealing is a rather serious thing in this Court’s vein. See the BILL WATSON CASE affirmed by the Appellate Court in which the Court gave reasons similar to herein.”
* * * s(c sfc Us
“Now, we get to the point that is slightly controverted. Landry says he was detained in that room for about two and a half hours and the security officer for Schwegmann’s says five minutes. Landry said that he was going to the Bank of New Orleans safety deposit box to get out a gift for his mother for Mother’s Day, this May 11th being a Friday. When he wasn’t able to make the 2:00 o’clock closing because he was detained until around 4:00 o’clock, he was not able to get in until around 4:15-4:30. Landry testified that he pleaded with Mr. Oubre, head of security of that store, to allow him to go to his truck and get a pill to take which he said Mr. Oubre allowed him to do. The security guard says no way.
“Considering Landry’s testimony, considering the testimony of his former wife or present wife, they are legally separated, whom this Court was extremely impressed with, considering all of the testimony taken, the Court is of the opinion that Landry is telling the truth.... ”
* !(! J(! * $ SfC
“I was unimpressed with the security guard and impressed with Landry’s testimony and impressed with his wife and his sister’s testimony. There is controversy whether or not there was a bruise on his forehead. Landry says they brought him in and sort of rushed him through the door causing him to hit the wall and then they searched him and he said he took off his britches and he said Oubre said that wasn’t necessary. Landry did say on that day that he bought a bone for his labra-dor retriever and I think some kind of collar.”
s(s * h¡ *
“There is no doubt that Landry was inflicted with physical damage on his body by these guards, either through extraordinary handling of his arms, et cetera. He had to go to Methodist Hospital in which he spent a period of about ten hours there. Methodist Hospital the Court takes notice ex proprio motu is a good institution and the Court would not assume that if Landry was not messed up that he would spend ten hours in the emergency. The testimony showed that the doctor got so worked up by his condition that he ordered Landry to go to DePaul Hospital according to the testimony of his wife who was there. That doctor being in Colorado, Dr. Roy. He *344 ordered him to go to DePaul. He didn’t suggest it, recommend it, he ordered him to be taken forthwith to DePaul Hospital, the mental institution here in this city and Landry was brought there.
“Jumping ahead in my reasons, Dr. Church, the psychologist, said she had no doubt that the incident in Schwegmann’s was a precipitating cause of his mental derangement which presently he still has. So because of gross negligence of a Schwegmann employee, we now find a peaceable citizen of our community having to spend ten hours in Methodist Hospital and five days in DePaul’s. As of today he is still suffering according to Dr. Church.”
* * * * * *
“There was no testimony in the record which shows that he was not normal before this incident.”
% * * * * *
“The Court must conclude, not assume, that this was the precipitating cause that got him in this condition.”
♦ * »fc * * *
“The Court is of the opinion for the mental pain and suffering, physical pain and suffering and to the best of its ability award him something for lost wages. The Court is of the opinion that the sum of $85,000.00 should be and is hereby awarded to Landry. The Court feels this is not a high figure and the Court feels that perhaps it is a modest figure to a degree but it must put the brakes somewhere and I address myself to my Learned Brethren on the Court of Appeals and if I was on the low side please advise me and raise the amount.
“Landry is in his early fifties. He didn’t physically tell us how old he is. He is in his fifties so the length of his life of twenty years he has to go around with all his problems. His sister, the nun, I don’t think lied to me and we had to shut her up because of the hearsay rule. But she claimed that he was talking about the war days and maybe being detained in that room brought back memories. Maybe. I don’t know. She said she never heard him talk about the war before. She said he was spilling about the war in DePaul’s.
“The medical bills. The Court hereby awards the sum of $200.00 for Dr. Church. Dr. Birchard, the other psychiatrist, $70.00.... the court hereby fixes an amount of $285.00 for Dr. Fuge. .. . ”
******
“Then the Methodist Hospital bill is $84.50. Then DePaul’s bill has to be awarded which was $128.35. So the medical bills come to $867.85. Therefore, this Court is awarding $85,000.00 as stated supra plus the $867.85 for a total award of $85,867.85.
“Now the expert fees are as follows: The Court has awarded $150.00 to Dr. Church, $150.00 to Dr. Fuge, and Dr. Llouwellyn testified yesterday after the Court had to leave and $150.00 for Dr. Llouwellyn’s testimony. Then we have Dr. Roy’s testimony which is $100.00 and then we have the expenses to go to Idaho which is $412.00 taxed as cost and $46.92 was the cost of the deposition. So the total cost including travel and the deposition for the Idaho deposition is $458.92.”
******
“(t)he last item is $53.00 for the cost of the deposition of Dr. Llouwellyn taken yesterday and identified as P-19 is included.”
On appeal, defendant argues that Mr. Landry was detained only for a period of one hour, that it was improper for the trial judge to find that Mr. Landry’s head was bruised on the basis of lay testimony, that there was no causal link between the Schwegmann incident and plaintiff’s mental condition, and that the amount awarded was clearly excessive.
The question of the length of detention was a factual question resolved by the trial judge in favor of plaintiff on the basis of Mr. Landry’s testimony that he was taken into custody by the security guards at about 1:30 p. m. and detained until he walked into the adjoining Bank of New *345 Orleans office at about 4:15 p. m. In contrast, Eddie Williams, the only security guard who testified at the trial, stated that Mr. Landry was detained for less than five minutes, that he was not searched and that no shoving occurred which would have resulted in a bruise on plaintiff’s forehead. On questions of credibility, great weight is given to the trial judge’s determinations as it is he who has the opportunity to observe the demeanor of the witnesses.
Defendant further argues that the existence of a bruise on plaintiff’s forehead or the lack thereof should have been established by expert instead of lay testimony. While defendant is technically correct that the existence or lack of a bruise is a medical determination, bruises are so common a part of everyday life that this court feels that even laymen are familiar with and capable of identifying a common and ordinary bruise. Anyone who has ever engaged in athletic competition, taken a physical education course in school, had a son on a Little League team or raised a toddler is familiar with bruises. In the instant case, Mrs. Landry, a medical technician with over 13 years of education and experience, testified that a bruise existed on plaintiff’s forehead, as did plaintiff’s sister, Sister Myia Landry, a Catholic nun of the Order of Theresans. Defendant argues that because the emergency room report prepared by Dr. A. Kenison Roy, III does not indicate a bruise on the forehead no bruise existed. We do not agree. Dr. Roy testified via deposition that at the time of the incident he was a resident at Methodist Hospital. He further testified that he had no independent recollection of the incident but needed to rely on his report. Dr. Roy also stated that Dr. Elizabeth Hilleker examined and diagnosed the patient and that he confirmed Dr. Hilleker’s examination after he relieved her in the emergency room. In light of the testimony presented, the court finds that the trial judge’s determination was not amiss on this point.
Defendant’s argument that no causal link exists is an argument unsupported by the evidence presented. Immediately after the Schwegmann incident, plaintiff walked into the BNO branch office. The BNO employees realized that Mr. Landry was in a dazed and confused state and summoned his family. His family immediately took him to the Methodist emergency room, from which he was ordered to De-Paul’s for a period of confinement. Dr. Jane Church, who taught Dr. Roy, found a causal link between the incident and plaintiff’s condition. Indeed, she found that he still suffers from chronic depression and acute anxiety as indicated by objective testing[1] and that he has made no progress to date. Sue Ellen Lyons, Mrs. Landry’s daughter, and Mrs. Landry both testified that Mr. Landry was crying incoherently and hallucinating immediately after the Schwegmann incident. We find that the trial judge was clearly correct in his determination on this issue.
Turning to the issue of quantum, we note that Mr. Landry had some other physical injuries unrelated to the incident at issue. Because of those injuries, however, Mr. Landry was under medical observation. Dr. Harry Pflug, who operated on Mr. Landry, testified that as of October 15,1979 the plaintiff was still taking medication for his mental disorders. Dr. Church likewise testified that Mr. Landry was still taking medication as of January 10, 1980, and that he appeared to be in worse condition than on his other visits. At trial, plaintiff testified that he was still taking medication for anxiety and depression. As • a result of this incident, plaintiff and his wife have been living separate and apart, although not divorced, since October 8, 1974. Plaintiff is unable to function in his former capable manner and is unable to enjoy his remaining years in a manner which we all anticipate.
In light of the evidence and testimony presented and the effects of this particu *346 lar incident on this particular plaintiff, we find that the trial judge did not clearly abuse his discretion in the amount awarded.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.

. The objective test involved is Minnesota Mul-tiphasic Personality Test, which indicated severe psychopathology and severe depression.